## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Mildred Fern Burley,** <br> 20 Rollingwood Drive, Space #109 <br> Jackson, California 95642 <br><br> **William David Burley Jr. III** <br> 1 Pine Wood Ln., Apt. 215 <br> Sutter Creek, California 95686, <br><br> **California Valley Miwok Tribe, a federally recognized Tribe,** <br> 14807 Avenida Central <br> La Grange, California 95329, <br><br> **and,** <br><br> **Silvia Fawn Burley, in her Official Capacity as Chairperson of the Tribe's General Council and personal capacity as a member of the Tribe,** <br> 14807 Avenida Central <br> La Grange, California 95329 <br><br> v. <br><br> **Deb Haaland, U.S. Secretary of the Interior, in her official capacity, Department of the Interior** <br> 1849 C Street, N.W. <br> Washington, DC 20240, <br><br> **Bryan Newland, Assistant Secretary – Indian Affairs, in his official capacity, Department of the Interior** <br> 1849 C Street, N.W. <br> Washington, DC 20240, <br><br> **Amy Dutschke, Regional Director, Bureau of Indian Affairs, in her official capacity, Pacific Regional Office – Bureau of Indian Affairs** <br> 2800 Cottage Way, Room W-2820 <br> Sacramento, CA 95825, | **Civ No. -** <br><br><br><br><br> **COMPLANT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**Harley Long, Superintendent,**
**Central California Agency, Bureau of**
**Indian Affairs, in his official capacity,**
650 Capitol Mall, Suite 8-500
Sacramento, CA 95814,

**Does 1 to 100,**

*Defendants.*

## COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND OTHER RELIEF

### INTRODUCTION AND SUMMARY

Plaintiffs in this case—Mildred Burley, William Burley Jr., Silvia Burley, and the California Valley Miwok Tribe (Tribe)—are seeking relief against the United States Department of the Interior, the Secretary of the Interior, the Assistant Secretary—Indian Affairs, and other officials within the Department of the Interior (Defendants). Plaintiffs allege that these Defendants violated both the Administrative Procedure Act (APA) and the United States Constitution by abusing its discretion, acting in an arbitrary and capricious manner, disregarding federal regulations, and denying Plaintiffs their right to due process.

Plaintiffs, who are enrolled tribal members of the California Valley Miwok Tribe, challenge Defendants' actions related to a petition for a Secretarial Election to adopt a tribal constitution. Under federal law and regulations, such an election is a significant event that can shape a tribe's future governance. The regulations governing this process, found in 25 C.F.R. Part 81, set clear rules that must be followed to ensure fairness and legitimacy. However, in this instance, the Defendants responsible for overseeing this process did not follow these mandatory rules on their face.

2

Despite these clear regulatory requirements, Defendants accepted a petition from individuals who are not even members of the Tribe, some of whom openly admit as much. This acceptance of the petition is unlawful and goes beyond the authority granted to these Defendants under federal law.

Plaintiffs followed the proper procedure to challenge the acceptance of the petition, but their challenge was dismissed by Defendants without any reasoned explanation from Defendants. Further, Defendants failed to communicate directly to Plaintiffs its decision to validate the petition and dismiss Plaintiffs' challenge, depriving Plaintiffs of their right to understand and challenge Defendants' actions. Consequently, the denial of Plaintiffs' challenge is deemed a final agency action pursuant to 25 C.F.R. § 81.62(b)(2) and subject to judicial review pursuant to the APA.

Plaintiffs point out that this is not an isolated incident in their relations with Defendants, but it is part of a troubling pattern of incidents spanning over two decades. During this time, the record reflects that Defendants repeatedly shifted its stance on the governance and membership of the Tribe. For example, at one point, Defendants claimed that the Tribe was not "organized" and therefore must adopt a tribal constitution under the IRA with a provision for non-direct lineal descendants, even though the Tribe had submitted a draft tribal constitution under the IRA for review. On other occasions, Defendants attempted to force the Tribe to admit new members or hold membership drives, despite lacking the statutory authority to do so, all in order to cajole the adoption of a tribal constitution under the IRA. Now, Defendants' stance is the Tribe must "organize for the first time" under the IRA.

In this case, Plaintiffs argue that Defendants' decision that their challenge to the petition for a Secretarial Election under 25 C.F.R. Part 81 lacked merit. This decision by Defendants is

3

not only unsupported by the facts, but also violates fundamental principles of administrative law. Defendants failed to provide any detailed justification or reasoned explanation for its decision, which makes it impossible for Plaintiffs to understand the basis for the dismissal of the challenge or to mount a meaningful challenge. Moreover, Defendants directed no communications or acknowledgments of the regulatory challenge or its decision specifically to the Plaintiffs.

Furthermore, Plaintiffs assert that the non-tribal member individuals who submitted the petition lack the legal standing to do so. Indeed, the Indian Reorganization Act of 1934 (IRA) and its accompanying regulations do not give non-member individuals the right to trigger a Secretarial Election under 25 C.F.R. Part 81. By accepting the petition, Defendants failed to adhere to federal law and regulations, and effectively usurped the Tribe's sovereign right to determine its own membership criteria and governance, a right that is the bedrock of tribal self-determination. Additionally, Plaintiffs identified other deficiencies and the non-compliance with 25 C.F.R. Part 81 contained within the petition submitted to Defendants by the non-member individuals; thus, requiring the petition to be invalidated pursuant to 25 C.F.R. § 81.62.

Defendants' procedure and decision concerning Plaintiffs' regulatory challenge also fell short of the due process requirements embedded in the regulation under 25 C.F.R. Part 81 as well as those due process requirements guaranteed by the U.S. Constitution as articulated by *Matthews v. Eldrige and its progeny*. In reaching its determination that Plaintiffs' challenge was "without merit," Defendants' final agency action is unreasonable in light of myriad facts contained in the administrative record as Defendants failed to provide any written detailed justification or reasoned explanation for Defendants' decision.

Plaintiffs contend that Defendants' actions violate the APA. Plaintiffs respectfully request the Court to declare the Defendants' actions invalid, prevent the unlawful Secretarial

4

Election from proceeding, and require remand so Defendants adhere to the proper procedures set forth in the law.

In sum, this case is not about tribal membership or governance, this case, at its heart and on its face, is an Administrative Procedure Act matter. This case is about more than just procedural errors; it is about Defendants' overreach and disregard for both federal Indian law principles and application and adherence of its' own regulations. Plaintiffs have done everything required by law to protect their rights and now seek the Court's intervention to hold Defendants accountable for its arbitrary and capricious conduct and violation of Plaintiffs' due process rights.

Accordingly, Plaintiffs allege as follows:

## INTRODUCTION

1.  Plaintiffs incorporate any and all facts or allegations from the proceeding Introduction and Summary.

2.  This action is brought under the Administrative Procedure Act and the United States Constitution, following final agency action by Defendants.

3.  Plaintiffs challenged the acceptance of the petition in accordance with procedures in the Code of Federal Regulations, 25 C.F.R. Part 81. Where Defendants failed to communicate its decision to Plaintiffs and dismissed Plaintiffs' challenge without a reasoned explanation or detailed justification.

4.  Plaintiffs contest the legality of Defendants administratively accepting a petition from individuals—some of whom acknowledge they are not Tribal members —to hold a Secretarial Election to adopt a tribal constitution under the IRA.

5. For over twenty years, Defendants have attempted to compel the federally recognized California Valley Miwok Tribe to admit additional individuals into the Tribe without any statutory authority delegated by Congress. These attempts continue to persist despite a 2011 decision issued by Defendants stating Defendants lack such authority and left undisturbed by the holding of this District.

6. Defendants have been inconsistent and vacillated in its policies towards the *reorganization* or *organization* of the Tribe, often without an explanation for its change in policy. In doing so, Defendants have:

   a. In and around late 2003 and into 2004, the Tribe provided the Defendants a draft tribal constitution and enrollment ordinance for review as required in the Tribe's P.L. 93-638 Indian Self-Determination and Education Assistance Act (ISDEA or Self-Determination) contract (also referred to as, P.L. 93-638 contract). However, on or around March 26, 2004, Defendants informed the Tribe it was "not organized" and Defendants, on or around the same time, suspended the Tribe P.L. 93-638 contract award , only to be restored by Defendants on or around the same time.

   b. In 2005, the Tribe, in an effort to renew its annual contract under P.L. 93-638 Self-Determination funding, submitted a copy of its tribal constitution at the request by Defendants. In and around late mid-to-late 2005, Defendants treated the Tribe's submission as a request for assistance in conducting a Secretarial Election to adopt a tribal constitution approved by the Secretary of the Interior.

   c. The Tribe, after submitting a tribal constitution for approval in 2005 under Section 16 of the IRA, was informed by Defendants that the Tribe must include more potential or putative members to be eligible in the tribal constitution. The Tribe sought judicial

review in federal court seeking an order for Defendants to approve the Tribe's constitution— the Court determined that if a Secretarial Election was held, a universe of eligible or "putative" individuals must participate. Shortly thereafter, Defendants attempted to force the Tribe to hold a membership drive for the reorganization of the Tribe. That was followed by Defendants' decision that the Tribe was not organized under the IRA.

d.  In 2015, the Assistant Secretary—Indian Affairs, determined that there were three eligible groups of individuals that were eligible for membership and could participate if the reorganization of the Tribe occurs. When a Secretarial Election was sought and called to approve an IRA tribal constitution, judicial review was again sought, and the appeals court upheld the determination that there were "eligible groups" (2015 Decision). Nothing in the 2015 Decision requires reorganization.

e.  In 2022, the Assistant Secretary—Indian Affairs modified the 2015 Decision now declaring the Tribe requires "organizing for the first time" and modified the ancestry of the "eligible groups" (2022 Decision).

7.  Plaintiffs acknowledge that there are Assistant Secretary—Indian Affairs Decisions in 2015, upheld on review, and of 2022 (Order and Opinion filed, D.D.C. Aug. 12, 2024, *California Valley Miwok Tribe v. Haaland*, Case No. 22-cv-1740 modifying the 2022 Decision by changing the "eligible groups" of individuals that may participate in the *reorganization* or *organization* of the Tribe. Nothing in these Decisions or holdings of these cases mandates or requires or allows eligible <u>individuals</u> to submit a tribal constitution seeking a Secretarial Election, thus displacing the formalities of the IRA.

8.  Such an organizational formality and trigger occurs only under the IRA, when Section 16 of the IRA, and its accompanying regulations at 25 C.F.R. Part 81, are properly invoked.

9.  The IRA, Section 16, in part, sets forth: "(a) _Any Indian tribe[1] shall have the right to organize_ for its common welfare, and _may adopt_ an appropriate constitution[2] and bylaws." (25 U.S.C. 5123) (emphasis added).

10. The IRA, Section 16 provides no affirmative authority allowing Defendants to solicit petition for "organization" or "reorganization" for this Tribe or any tribe.

11. The IRA, Section 19, defines certain terms, such as "Indian" where "[t]he term 'Indian' as used in this Act shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood." (25 U.S.C. 5129).

12. The IRA, Section 16 is merely permissive giving tribes the option to seek approval for a tribal constitution from members who meet the criteria outlined in the IRA, Section 19. Furthermore, only those individuals who meet the definition of "Indian" in Section 19 of the

---

[1]  As defined in the IRA, Section 19, whenever the term "tribe" is used it "shall be construed to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation."

[2]  The IRA, Section 16 also sets forth: "(f) PRIVILEGES AND IMMUNITIES OF INDIAN TRIBES; PROHIBITION OF NEW REGULATIONS. – Departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461 et seq., 48 Stat, 984) as amended, or any other Act of Congress, with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes. (g) PRIVILEGES AND IMMUNITIES OF INDIAN TRIBES; EXISTING REGULATIONS. – Any regulation or administrative decision or determination of a department or agency of the United States that is in existence or effect on the date of enactment of this Act and that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes shall have no force or effect."

IRA can exercise the permissive right to reorganize by holding a referendum to adopt a tribal constitution approved by the Secretary of the Interior for the first time.

13. The *CVMT* case law— including *CVMT I, II, III, IV*— related to the "eligible group" (1) does not extend to individuals with group ancestry identified by the 2015 Decision and 2022 Decision and (2) does not extend membership or citizenship in a tribe to the group or individual. Nor could those decisions. In fact, if Defendants could have, Defendants would have done so expressly.

14. As discussed in more depth below, at the heart of *CVMT I, II, III, IV* are holdings about "eligibility" to participate in a validity called tribal constitutional referendum –commonly referred to as a Secretarial Election of the IRA, Section 16.

15. Precedent shows that Congress in limited circumstances enacts legislation governing the organization of tribes, including membership or governance because Congress holds full authority over Indian affairs. No known authority by Congress has been cited or relied upon by Defendants.

16. There are no known decisions or judicial holdings that establish that the individuals determined to be eligible to participate in a validly called Secretarial Election to adopt a tribal constitution are, in fact, members of an Indian tribe sufficient to validly submit a petition to seek a Secretarial Election, where such membership eligibility is a prerequisite for submitting a valid petition to request a Secretarial Election.

17. The status of an individual to "participate" in a Secretarial Election gave these individuals the right to "participate" in a validly called Secretarial Election. However, such status does not provide individuals of eligible groups the right to "participate" in *all* aspects of tribal law to develop and petition the Secretary of the Interior to adopt a tribal constitution under the IRA,

including even if Defendants believe that "participation" means involvement in all aspects of an IRA tribal constitution. Defendants are unlawfully determining tribal membership rather than that of the Tribe by validating the petition, thus violating the APA.

18. Only Indians meeting the definitions found in Section 19 of the IRA may seek a permissive right to reorganize under an IRA, Section 16 referendum adopting a Secretarial approved tribal constitution for the first time.

19. In this matter, Plaintiffs challenge the (1) the procedural deficiencies and failure to implement 25 C.F.R Part 81 and (2) the determination that the petition for a referendum was submitted by "Indians" sufficient to meet the statutory and regulatory requirements.

20. Plaintiffs are complaining that Defendants unlawfully accepted a petition from individuals potentially ineligible or authorized to submit a tribal constitutional petition pursuant to IRA Section 16 and its accompanying regulations, 25 C.F.R. Part 81 on behalf a of Indian tribe.

21. Plaintiffs, upon notice, immediately challenged the petition in accordance with the regulations; however, Defendants failed to provide Plaintiffs with due process in the processing of that challenge.

22. Defendants issued a determination to a third-party non-Indian that several of the Plaintiffs' challenges "had no merit" and merely carbon copying the Plaintiffs' name in the correspondence.

23. Plaintiff Tribe was provided no notice of challenge or acknowledgement, nor did Defendants communicate any determination to the Tribe— unlike past determination when Defendants responded to the Tribe with a denial or returned requests for action to the Indian tribal entity and its authorized representative.

24. Further, one Plaintiff, Mildred Burley received no communications related to her challenge directly, instead it was forwarded to a legal assistant and the law firm representing her in this matter.

25. Plaintiffs argue below that Defendants failure to provide reasoned explanation when it determined Plaintiffs' challenge to the petition was "without merit."

26. However, that conclusion was not accompanied by a justification or explanation at all.

27. Thus, Plaintiffs argue that Defendants' determination that Plaintiffs' challenge of the petition was "without merit" is arbitrary and capricious and an abuse of discretion violative of the Administrative Procedure Act.

28. Plaintiffs challenge numerous signatures in the petition. Numerous individuals whose names appear on the petition for referendum either are not, nor have ever been members of this Tribe, or any Indian tribe. At minimum, Defendants were required to complete a search inquiry and explain and justify as to whether each signature of the petition met the definition of Indian pursuant to Section 19 of the IRA.

29. To be clear, Plaintiffs are not challenging whether they have been denied membership or participation in a tribal activity—nor should be or could be eligible to participate in tribal activities, by a tribal government.

30. No statute, regulation, or judicial determination authorizes Defendants to bestow membership upon an individual sufficient to make that individual eligible to meet the definition of Indian pursuant to Section 19 of the IRA and then use that status or membership to validly affix that individual's signature to a petition submitted pursuant to Section 16 of the IRA.

31. As described in this Complaint, Defendants' actions to validate a petition to hold a Secretarial Election to adopt a tribal constitution for a federally recognized Indian tribe is

*ultra virus* agency action when it accepts that petition from individuals that have either never been members of a federal recognized Indian tribe or this Tribe or who have never possessed Indian status.

32. Such rules are obligations for Defendants to follow and Defendants' failure to do so is a violation of the Administrative Procedure Act *per se*.

33. <u>Plaintiffs therefore are complaining that Defendants failed to follow its own rules and abused its discretion in accepting the petition, and then failed to follow the procedure properly.</u>

34. <u>Plaintiffs seek declaratory and injunctive relief as this Court reviews Defendants' actions pursuant to the Administrative Procedure Act as well as relief from Defendants' violation of the Fifth and Fourteen Amendments to the U.S. Constitution.</u>

35. As described in this Complaint, Defendants failed to provide Plaintiffs' due process reasonably calculated to protect each Plaintiffs' interests by failing to communicate and provide notice and communications related to each Plaintiff's challenges to the petition.

36. Additionally, Defendants provide no authority that actions in this matter are related to 25 C.F.R. Part 62 includes enrollment decisions related to judicial or statutory mandates or those authorized and delegated to Defendants pursuant to a tribal law mandate pursuant an already adopted IRA constitution.

37. Finally, as described in this Complaint, the petition falls short of Defendants' own regulatory requirements for accepting and validating a petition to adopt an Indian Reorganization Act Constitution and is an abuse of discretion. Such failure by Defendants to follow its own regulations is facially a violation of the APA warranting remand at minimum.

**JURISDICTION**

12

38. This Court has jurisdiction under Article III, section 2, of the United States Constitution for claims under federal common law.

39. This Court has jurisdiction under 28 U.S.C. § 1331 for claims arising under the U.S. Constitution and laws of the United States, and under 28 U.S.C. § 1362 for claims brought by an Indian tribe arising under the U.S. Constitution and laws of the United States.

40. Declaratory relief is authorized pursuant to the Declaratory Judgments Act, 28 U.S.C.§§ 2201-2202, and the All Writs Act, 28 U.S.C. § 1651.

41. Actions and decisions of United States Department of the Interior Officials are reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Specifically, Defendants have consented to suit, Defendants' actions are reviewable by the Court, and a remedy is available under the various provisions of the APA, including 5 U.S.C. § 702 (providing for judicial review of agency action under the APA), 5 U.S.C. §704, 5 U.S.C. §705, and 5 U.S.C. §§ 706(2)(A), 706(2)(B), and 706(2)(C). In reviewing the Defendants' actions this Court "shall decide all relevant question of law, interpret constitutional and statutory provisions and determine the meaning of applicability of the terms of an agency action." 5 U.S.C. § 702.

42. Actions and decisions of the United States Department of the Interior and the United States Bureau of Indian Affairs (BIA) made pursuant 25 U.S.C. Chapter 45, specifically 25 U.S.C. § 5123 and § 5129 of the IRA, and its accompanying regulations at 25 C.F.R. Part 81.

43. Defendants rely on decisions made by the Assistant Secretary—Indian Affairs in 2015 and 2022 as the basis for their determination to validate the petition to hold a Secretarial Election to adopt a tribal constitution and have delegated the implementation of such decisions from their Washington D.C. office. *See* Letter from Darryl LaCounte to Peter D. Lepsch (April 1, 2024).

44. Defendants purport that their authority to take such actions challenged in this matter including acceptance, review and validation of a petition for a Secretarial Election to adopt a tribal constitution under the IRA derives from 25 USC § 2 and 43 U.S.C. § 1457. *See* Letter from Harley Long to Peter D. Lepsch (August 18, 2023) (stating that Congress has delegated to the Secretary of the Interior power "over all Indian affairs and all matters arising out of Indian relations" and public business related to Indians).

45. Actions and decisions of the Defendants form the bases of this cause of action are 25 C.F.R. § 81.62(b)(2) are final agency action requiring no additional remedies within the agency to become exhausted.

## VENUE

46. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because the Federal Defendants are located here, and the challenged agency decision was made by or on behalf of the Secretary of the Interior. *See generally Alabama v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 62 (D.D.C. 2018).

47. There is a strong nexus of the claims at issue in this case to the District of Columbia because Plaintiff's claims here "focus on the interpretation of federal statutes." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2001).

48. Furthermore, "[t]he Government cannot reasonably claim to be inconvenienced by litigating in this district; after all, this is its home forum." *Stewart v. Anzar*, 308 F. Supp. 3d 239, 248 (D.D.C. 2018).

49. The interpretation of the Administrative Procedure Act, the Indian Reorganization Act of 1934, the regulations at 25 C.F.R. Part 81, and other Agency's statutory authority, and the Plaintiffs' constitutional arguments and rights under the Constitution have broad-reaching, national policy implications and therefore the Plaintiffs' choice of venue is at home to the agency.

50. Therefore, venue is proper in this Court.

**PARTIES**

51. Plaintiff Mildred Burley is a duly enrolled member of the Tribe pursuant to the Tribe's enrollment ordinance and pursuant to Resolution R-1-12-06-2004 (December 6, 2004). Mildred Burley is a full-blooded Miwok Indian and is one of the last known fluent speakers of the Miwok language in California and North America. She sues in this matter in her personal capacity.

52. William David Burley III is a duly enrolled member pursuant to the Tribe's enrollment ordinance and pursuant to Resolution R-2-11-05-2007 (November 5, 2007). Mr. Burley sues here in his personal capacity.

53. Plaintiff Silvia Burley is a duly enrolled member of the Tribe pursuant to the Tribe's enrollment ordinance and enrolled in the Tribe, August 5, 1998, by then Tribal Chairman Yakima Dixie, acknowledged as so by the United States.

54. Plaintiff Silvia Burley was authorized to file this lawsuit on behalf of the more than two-dozen enrolled members of the Tribe, which includes minor, non-voting children not yet eighteen (18) years of age. Plaintiff Silvia Burley has represented the federally recognized tribe in her official capacity in other litigation, is identified in that litigation as a member of the federally recognized Indian tribe as well as the leader of the federally recognized Indian tribe. Defendants considered Plaintiff Silvia Burley as the leader of a faction, in what Defendants characterized as a leadership dispute in and around the years 2005 through 2012. Defendants acknowledged Plaintiff Silvia Burley as spokesperson for the Tribe from June 1999 through December 2011, including Defendants' correspondence with Plaintiff Silvia Burley as the Tribe's member agent related to P.L. 93-638 Indian Self-Determination and Education Assistance Act ("ISDEA" or "Self-Determination") contract award (also referred

to as, "P.L. 93-638 contract") for the years 1999 (partial), 2001-2006, 2007 (suspended), 2008 (suspended), 2009, 2010, 2011 (partial). Defendants recognized Plaintiff tribal government, represented by Plaintiff Silvia Burley for more than a decade determining only in late 2011 to begin a hiatus in government-to-government relations which exists to this day.

55. The Tribe is a federally recognized Indian tribe appearing on all annual announcements since the enactment of P.L. 103-454, 108 Stat. 4791 (1994) as well as in United States Federal Register notices reporting a Government-to-Government relationship with and extending services to Indian tribes, dating back to 1972. *See* "American Indians and Their Federal Relationship, Department of Interior," BIA (1972); *see also* Notice, Indian Tribal Entities that have a Government-to-Government Relationship with the United States, 44 Fed Reg. 7235, 7236 (Feb. 6, 1979); 60 Fed. Reg. 9250 (Feb. 16, 1995); 67 Fed. Reg. 46328, 46328 (Jul. 12, 2002) (formerly the Sheep Ranch Rancheria of Me-Wuk Indians of California); 88 Fed. Reg. 2112, 2112 (Jan. 12, 2023); 89 Fed. Reg. 944, 944 (Jan. 8, 2024); Letters between the Tribe and BIA (May 2002 and June 2002) (describing the Tribe's following of procedure that a recognized tribal government provides notice to the United States of its name change). The United States conferred tribal status in 1935. *See* No. Civ. S-A2-09L2 FCD GCH at 2 (Memo & Order Jul 1, 2004).

56. The Tribe was not terminated under the California Rancheria Act of 1958, as amended in 1964 (Pub. L. 85-671, 72 Stat. 619, 85 Cong. (1958)). The United States has represented in various court filings that the Tribe was not terminated. *See, e.g.*, No. Civ. S-A2-09L2 FCD GCH, FN4 (Memo & Order Jul 1, 2004).

57. Despite the negative treatment the United States Circuit for the District of Columbia noted that the United States accepted one or more individual Plaintiffs in this matter and its chairperson at the time as representing the California Valley Miwok tribe as the tribal government. *See Ca. Valley Miwok Tribe v. U.S.*, 515 F.3d 1262 (D.C. Cir. 2008).

16

58. Defendant United States Department of the Interior is a department of the executive branch of the United States Government reporting directly to the President of the United States.

59. Defendant Deb Haaland is the Secretary of the Department of the Interior ("Secretary") and is sued in her official capacity.

60. Defendant Brian Newland is the Assistant Secretary—Indian Affairs in the Department of the Interior overseeing the Bureau of Indian Affairs ("AS-IA") and is sued in his official capacity.

61. Defendant Amy Dutschke is the Pacific Region Director for the Bureau of Indian Affairs reporting to Assistant Director – Indian Affairs Brian Newland ("Director") and is sued in her official capacity.

62. Defendant Harley Long is the Central California Agency Superintendent for the Bureau of Indian Affairs reporting to Pacific Region Director Amy Dutschke and is sued in his official capacity.

63. Does 1 – 100 have yet to be identified.

## BACKGROUND AND GENERAL ALLEGATIONS

64. Plaintiffs incorporate all proceeding paragraphs and fact and allegations.

65. In this matter, the Tribe is a federally recognized Indian tribe by the United States of America and the individual Plaintiffs are Indians who are enrolled members of the Tribe; and Defendants and courts have acknowledged Plaintiffs' status as both Indians and members of the Tribe. *See Cal. Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1265 (D.C. Cir. 2008).

66. The Tribe consists of eighteen (18) duly enrolled members pursuant to the Tribe's enrollment ordinance.

67. American Indian tribes existed long before the arrival of European nations and the founding of the American Republic. "It must always be remembered that the various Indian tribes were once independent and sovereign nations, and that their claim to sovereignty long predates

17

that of our own Government … [t]hey were, and always have been, regarded as having a semi-independent position when they preserved their tribal relations; not as States, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, *with the power of regulating their internal and social relations*." *United States v. Kagama*, 118 U.S. 375, at 381-382 (1886). (emphasis added).

68. Federal Indian law allows for "Indians to make their own laws and be ruled by them." *Williams v. Lee*, 358 U.S. 217, 220 (1959).

69. Indian tribes retain inherent sovereignty that has not been extinguished by the United States through Congress' plenary power or negotiated away by tribes in treaties and other agreements. Put differently, federally recognized Indian tribes in the United States retain inherent sovereignty unless divested by consent or by Act of Congress. Tribal sovereignty is not granted by the United States, or by treaty or statute, but instead flows from the status of Indian tribes as sovereigns that pre-existed the United States.

70. It is well-settled, black letter law that Indian tribes retain the power to decide their own membership criteria. "A tribe's right to *define its own membership* for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n. 32 (1978). (emphasis added).

71. Tribe's inherent power is subject only to Congress' Plenary Power. *Lone Wolf v. Hitchcock*, 187 U.S. 553 (1903).

72. "[T]he Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as 'plenary and exclusive.'" *United States v. Lara*, 541 U.S. 193, 200 (2004).

73. "Thus, unless limited by treaty or statute, a tribe has the power to determine tribe membership, *Cherokee Intermarriage Cases*, 203 U.S. 76 (1906); *Roff v. Burney*, 168 U.S. 218, 222-223, (1897)[.]" *United States v. Wheeler*, 435 U.S. 313, 322 n. 18 (1978).

### A.  Pertinent History of the Tribe

74. The Tribe, dating to in and around 1916, initially conducted relations with the United States as the Sheep Ranch Indians, which the Indians and the land later became known as the Sheep Ranch Rancheria after the United States purchased approximately one (1) acre of land for the use by homeless Indians.

75. Defendants' Indian agent found one individual on the Sheep Ranch Rancheria property, on the one specific day Defendants mandated that a vote occur on the IRA, in June of 1935. That individual voted in favor of the IRA. However, the Tribe never chose to organize under the IRA. The United States conferred tribal status and officially recognized the Tribe's organization as a distinct political entity in 1935. *See California Valley Miwok Tribe v United States,* No. Civ. S-A2-09L2 FCD GCH at 2 (Memo & Order Jul 1, 2004).

76. Instead, the Tribe maintained its inherent sovereign powers to govern itself and its internal affairs— like numerous other tribes in California, and other historic tribes throughout the United States, which voted in favor of the IRA but never affirmatively chose to organize under IRA, Section 16.

77. Indians of Sheep Ranch Rancheria are recorded as conducting relations with the United States in a 1947 list compiled by Theodore Haas.

78. The Tribe survived the policy efforts by the Defendants in and around 1966 to terminate the Government-to-Government relations with the Tribe, it's resident Indian, and dispose of the land, pursuant to the California Rancheria Act, as amended in 1964. California Rancheria Act of 1958, Pub. L. No. 85-671, 72 Stat. 619 (1958).

79. The California Rancheria Act was enacted to accomplished two goals: (1) terminate the "Indian status" of individual Indians, and to (2) dispose of properties that the United States purchased, and held in trust, for the use and occupancy of individual Indians.

80. The efforts to terminate the relationship of one individual on the Sheep Ranch Rancheria failed; however, and the property was disposed of after a lengthy probate.

81. Ultimately, nothing in the historical record establishes that the Tribe was ever terminated and it continued to persevere as a federally recognized Indian tribe. Moreover, the United States has represented in various court filings that the Tribe was not terminated. *See, e.g.*, *California Valley Miwok Tribe v United States* No. Civ. SA2-09L2 FCD GCH, n.4 (Memo & Order Jul 1, 2004).

82. In modern times, the Tribe was included on every list of federally recognized Indian tribes published in the Federal Register from the first such publication in 1979, at 44 Fed. Reg. 7235.

83. Plaintiff Silvia Burley, and the Tribe's General Council, adopted a tribal resolution changing the name of the Tribe to the California Valley Miwok Tribe on May 7, 2001. Resolution Authorizing Submission of a Request to Change the Name of the Tribe "Sheep Ranch Rancheria of Me-Wuk Indians" of California to the "California Valley Miwok Tribe," Resolution R-1-5-07-2001 (May 7, 2001). Defendants accepted the name change. Letter from Sharon Blackwell, Deputy Commissioner of Indian Affairs, to Silvia Burley, Chairperson, June 7, 2001. The list published in 2002 noted that the Tribe had changed its name to the "California Valley Miwok Tribe," and the Tribe has been identified as such in every subsequent list of federally recognized tribes. 67 Fed. Reg. 46328 (Jul. 12, 2002). *See also* U.S. Department of the Interior, Office of Inspector General, Final Report, Jan 10, 2007, page 2 (noting that the Federal Registered Notices "have listed the Tribe as a federally recognized tribe under its current and former names.").

84. Yakima Dixie ("Mr. Dixie"), in 1994, sought money from the BIA for repairs to housing on property which was once referred to as the "Sheep Ranch Rancheria." Letter from Yakima Dixie to BIA Superintendent Harold Brafford (Month and day illegible, 1994).

85. On or around August 5, 1998, Mr. Dixie enrolled individuals in the Tribe including Plaintiff Silvia Burley. Memorandum from Yakima Dixie (August 5, 1998) (regarding the enrollment of Silvia Burley, Anjelica Paulk, Rashel Reznor and Tristian Wallace).

20

86. Mr. Dixie and all enrolled members of the Tribe met with BIA officials on and around September 8, 1998, in which an audio recording and transcript of this meeting was made.

87. With the assistance of Defendants, the Tribe adopted a 1998 Resolution providing for the Tribe's day-to-day operations and General Council government. *See Sheep Ranch Band of Me-Wuk Indians, Establishing a General Council to Serve as the Governing Body of the Sheep Ranch Band of Me-Wuk Indians, Resolution #GC-98-01* (November 5, 1998).

88. From the time period in and around 1995 through April 1999, Mr. Dixie was considered the leader of the Tribe by the United States.

89. On July 20, 1999, Defendants and the Tribe entered into a "self-determination contract," or P.L. 93-638 contract, that provided annual funding for the development and organization of the Tribe for the benefit of future tribal members, and on September 30, 1999, the Tribe became a "contracting Tribe" pursuant to the Indian Self Determination Act, Pub. L. No. 93–638, 88 Stat. 2203 (1975). *See Sheep Ranch Tribe of Me-Wuk Indians, Resolution No. TC-99-006* (July 10, 1999).

90. In and around 2002, Defendants inserted a provision in the Tribe's P.L. 93-638 contract requiring that the Tribe's "governmental development should be focused on obtaining Secretarial approval of an appropriate Tribal constitution." Letter from Superintendent Rising to Chairperson Burley (March 26, 2002).

91. Neither the IRA nor P.L. 93-638 require that a tribe be organized under the IRA in order to receive federal services.   *Kerr-McGee Corp. v. Navajo Tribe of Indians,* 471 U.S. 195, 198 (1985) ("[the Indian Reorganization Act] does not provide that a tribal constitution must condition the power to tax on Secretarial approval. Indeed, the terms of the IRA do not govern tribes, like the Navajo, which declined to accept its provisions.")

92. Therefore, no statutory or regulatory mandate requires a federally recognized Indian tribe to develop a tribal constitution or a tribal constitution under the IRA to receive award under P.L. 93-638 contracting.

93. Through application of the Plaintiffs, the Defendants awarded P.L. 93-638 contracts to the Tribe in the years 1999 (partial), 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007 (awarded and withdrawn), 2010 (partial), and 2011 (awarded but withheld by Defendants and subject to pending appeal, currently stayed before Civilian Board of Contract Appeals, CBCA 2676-ISDA & 2756-ISDA (Hon. Jonathan D. Zischkau)).

*(1) Leadership Dispute*

94. On or about April 19, 1999, Yakima Dixie resigned as Tribal Chairperson. On or around April 20, 1999, Mr. Dixie's resignation was accepted. In or around June 1999, Defendants recognized the Tribe's government and Plaintiff Silvia Burley as Tribal Representative/Spokesperson based primarily on Mr. Dixie's resignation in April 1999.

95. A July 12, 2000, letter from the Defendants to Plaintiff Silvia Burley recognized her as chairperson of the Tribe. *California Valley Miwok Tribe v. United States*, 424 F. Supp. 2d 197, 199 (D.D.C. 2006), *aff'd*, 515 F.3d 1262 (D.C. Cir. 2008).

96. At some time in or around late 2002, a leadership dispute developed within the Tribe with Mr. Dixie claiming he had not resigned his leadership role.

97. On November 24, 2003, Defendants wrote to Plaintiffs, General Council, and Plaintiff Silvia Burley: "the Bureau of Indian Affairs maintains a government-government relationship with the California [sic] Band of Miwok Indians through the tribal council chaired by Ms. Silvia [sic] Burley." Press Release, Bureau of Indian Affairs (Nov. 24, 2003).

98. In and around June 2005, the Defendants suspended the P.L. 93-638 contract with the Tribe on the determination that the leadership dispute was not resolved and was not likely to be resolved between Plaintiff Silvia Burley and Mr. Dixie.

99. The Tribe remained engulfed in litigation stemming from this leadership dispute, at least until Mr. Dixie died on December 12, 2017.

100.    The typical stance of Defendants is that they do not issue a stand-alone tribal leadership recognition decision because doing so would impermissibly interfere in the tribal resolution

of internal political issues. *See Cayuga Indian Nation of New York v. Eastern Regional Director*, BIA, 58 IBIA 171 (2014).

101.    Courts have also made it clear that is "a bedrock principle of federal Indian law that *every tribe* is capable of managing its own affairs and governing itself." (emphasis added) *Cayuga Nation v. Howard Tanner*, 824 F.3d 321, 327 (2d Cir. 2016).

102.    The mere existence of an internal dispute and alleged resulting paralysis within the Tribe does not permit Defendants to decide who constitutes the Tribe's legitimate leadership. *See Id*. at 328.

103.    In situations involving tribal leadership disputes, the Indian Board of Indian Appeals has approved the BIA recognizing, on an interim basis, the last undisputed tribal leadership. *See Cayuga Indian Nation of New York v. Eastern Regional Director*, BIA, 58 IBIA 171 (2014).

104.    The last undisputed tribal leadership of the Tribe as recognized by Defendants is Plaintiff Silvia Burley.

### *(2) Defendants Intrusion on Tribal Sovereignty*

105.    In 1934, Congress enacted the Indian Reorganization Act, Pub. L. 73-383, 48 Stat. 984 (1934) ("IRA"), "to conserve and develop Indian lands and resources; to extend to Indians the right to form business and other organizations; to establish a credit system for Indians; to grant certain rights of home rule to Indians; to provide for vocational education for Indians; and for other purposes."

106.    The Tribe withstood attempts by the BIA efforts to terminate it under the California Rancheria Act of 1958, as amended in 1964, Pub. L. 85-671, 72 Stat. 619, 85 Cong. (1958).

107.    "Congress has expressly repudiated the policy of terminating recognized Indian tribes…." Pub. L. 103-454, § 103(5), 108 Stat. 4791 (1994), 25 U.S.C. § 479a Note.

108.    Absent an Act of Congress to the contrary, Indian tribes retain their inherent sovereign authority to establish their own membership criteria and to admit or deny membership to any individual. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n. 32 (1978); *Cherokee*

*Intermarriage Cases*, 203 U.S. 76 (1906); *Roff v. Burney*, 168 U.S. 218, 222-223, (1897);

*United States v. Wheeler*, 435 U.S. 313, 322 n. 18 (1978).

109.  As noted above, Defendants have been inconsistent and vacillated in their policies toward the "reorganization" and "organization"[3]  of the Tribe without explanation.

    a.  In 2015, the Assistant Secretary—Indian Affairs, determined that there were three (3) eligible groups of individuals that were eligible for membership and could participate in the "<u>reorganization</u>" of the Tribe when a Secretarial Election was sought and called to approve a new IRA constitution. Again, Judicial review was sought, and the appeals court upheld the determination that there were "eligible groups" (the "2015 Decision").

    b.  In 2022, the Assistant Secretary—Indian Affairs, "modified" the 2015 Decision. The Assistant Secretary—Indian Affairs declared the Tribe requires "<u>organizing for the first time</u>" [emphasis added], and modified the ancestry of the "eligible groups" but states that "[b]y revising the Washburn Decision to include the descendants of individuals on the 1929 Census as an eligible group, the Department again recognizes the greater Tribal community eligible to organize the Tribe based on the Eligible Groups' previous efforts to organize. Except as otherwise inconsistent with the

---

[3]  Defendants' insistence that a federally recognized Indian tribe is "not organized" and is mandated to organize under the IRA is unlawful *per se* because (1) it is antithetical to foundational and fundamental principles of Indian Affairs that date to the Supreme Court's *Marshall Trilogy*. Defendants' determination that "eligible" members may petition for a Secretarial Election is an admission that the Defendants choose to willfully and unlawfully withhold relations with a federally recognized Indian tribe—and continue to do so—of a duly elected tribal government and its authorized Tribal Representative which creates a hiatus government which is unlawful under federal law. *See Goodface v. Grassrope*, 708 F.2d 335 (8th Cir. 1983) *and its progeny* (finding a hiatus in Government-to-Government relations that the BIA acted arbitrarily and capriciously by effectively creating a hiatus in tribal government and relations with the United States which jeopardized the continuation of necessary day-to-day services to Indians of a federal recognized tribe).

inclusion of this group as an Eligible Group, I endorse and reaffirm the Washburn

Decision in its entirety."

110.    Additionally, Defendants— again without any statutory authority from Congress— have

attempted to compel the federally recognized California Valley Miwok Tribe to admit

additional individuals into the Tribe in order to adopt a tribal constitution pursuant to 25

U.S.C. § 5123.

111.    The BIA has gone so far as to publish notices in local newspapers soliciting individuals

who *might* be lineal descendants of the Tribe. After being challenged, Defendants responded

that its purpose was not to "determine who the members of the Tribe will be," but rather to

"assist the Tribe in identifying the whole community, the 'putative' group, who would be

entitled to participate in the Tribe's efforts to organize a government that will represent the

Tribe as a whole." Letter from Clay Gregory, Regional Director, Bureau of Indian Affairs, to

Silvia Burley, A.R. at 1498 (Apr. 2, 2007*). California Valley Miwok Tribe v. Salazar*, 967 F.

Supp. 2d 84, 88 (D.D.C. 2013).

112.    Defendants were directed to cease in their overt attempts to organize the Tribe as initiated

in 2006 and 2007, because the Tribe was already "organized as a General Council" pursuant

to the 1998 General Council Resolution. Letter from Larry Echo Hawk, Assistant

Secretary—Indian Affairs, to Silvia Burley, A.R. at 1765 (Dec. 22, 2010). *Id.*

113.    On August 31, 2011, the Assistant Secretary– Indian Affairs issued his revised decision

(the "August 2011 Decision"). The August 2011 Decision reached the following conclusions:

(1) the Tribe is a federally recognized tribe; (2) the BIA cannot force the Tribe to organize

under the IRA and will cease all efforts to do so absent a request from the Tribe; (3) the BIA

cannot compel the Tribe to expand its membership and will cease all efforts to do so absent a

request from the Tribe; (4) as of the date of the Decision, the Tribe's entire citizenship

consists solely of Yakima, Burley, Burley's two daughters, and Burley's granddaughter; and

(5) the November 1998 Resolution established a General Council comprised of all of the

adult citizens of the Tribe, with whom BIA may conduct government-to-government relations. *California Valley Miwok Tribe v. Jewell*, 5 F. Supp. 3d 86, 95 (D.D.C. 2013).

114.    The Court found that the Tribe is a federally recognized Indian tribe, as that was not in dispute, but that the Assistant Secretary– Indian Affairs was remiss in assuming that the Tribe's membership consisted of only those five individuals and that the General Council was a duly constituted tribal government. *California Valley Miwok Tribe v. Jewell*, 5 F. Supp. 3d 86, 96 (D.D.C. 2013).

115.    The Court left in place Assistant Secretary Echo Hawk's determinations that 1) the Tribe is a federally recognized tribe; (2) the BIA cannot force the Tribe to organize under the IRA and will cease all efforts to do so absent a request from the Tribe. *See id.* Nothing in the later 2015 or 2022 Decisions disturb these determinations by the Assistant Secretary in 2011. In fact, the 2015 and 2022 Decisions ignore that this ruling of the Court was *narrow*, and Defendants pretend that the 2011 Decision or the leadership dispute controversy did not exist.

116.    Furthermore, the Court, narrow holding did not appear to take into account that the Tribe would continue to grow in its membership, or continue to develop its tribal government, rather than be frozen in time in 1998.

117.    So, all in all, beginning in 2015, Defendants transmuted a leadership dispute of a federally recognized Tribe into a grab of authority to reorganize tribes.

118.    Defendants, in reliance of this Court's 2013 decision in *California Valley Miwok Tribe v. Jewell*, issued their 2015 and 2022 Decisions concluding that "eligible groups" of ancestor lineages would be allowed to take part in a Secretarial Election to adopt a constitution for the Tribe.

119.    In an effort to determine which individuals make up the "eligible groups", Defendants used the 2015 and 2022 Decisions as their bases for issuing a Public Notice on or about November 29, 2022, publicly soliciting Certificate Degree of Blood Quantum applications to

determine which "Indians" that would make up "eligible groups." Stated another way, Defendants were seeking out individuals and requiring them to submit documentation in the form of a Certificate Degree of Indian Blood application to be identified as "Indians," potentially eligible to participate in Defendants manifest desire to organize (or re-organize) the Tribe under the IRA.[4]  In short, Defendants had gone into the business of making "Indians" in violation of the law.

120.    More directly on point to Plaintiffs challenge is that Defendants are acting without any statutory or regulatory authority and ignore their own administrative case law that the running disputes related to this Tribe stem from a leadership dispute that is now been resolved for seven years and that they are obligated to recognize the last undisputed leadership of the Tribe. *See Cayuga Indian Nation of New York v. Eastern Regional Director*, BIA, 58 IBIA 171 (2014).

121.    This coercive action from Defendants is without any justification and defies the Supreme Court finding that non-Indian Reorganization Act tribes, like the Tribe in this case, are not subject to secretarial approval of their constitutions or codes. *Kerr-McGee Corp. v. Navajo Tribe*, 471 U.S. 195, 198-199 (1985).

122.    In the case of this Tribe, Congress has never passed any statutory authority, nor has the Tribe otherwise agreed to negotiate away, the power to define its own membership criteria for tribal purposes or any other internal affairs.

---

[4]  This issue is presently being litigated in a related case. *See CVMT v. Haaland,* 24-cv-947-TSC (D.D.C. 2024) (lawsuit brought by Plaintiff Silvia Burley and Plaintiff Tribe, seeking to enjoin the use of Certificate Degree of Indian Blood as unconstitutional as the issuance only establishes race and not tribal enrollment).

123.    Congress has defined the membership criteria for other federally recognized Indian tribes. *See e.g., Modoc Nation, formerly the Modoc Indian Tribe of Oklahoma*, Pub. L. 95–281, (May 15, 1978) *formerly codified* at 25 U.S.C. § 861a(a)(3).[5]

124.    No such statute exists.

**B. Secretarial Elections- 25 C.F.R. Part 81**

125.    The Code of Federal Regulations at 25 C.F.R. Part 81 prescribes the Department of Interior's procedures for authorizing and conducting federal elections for tribal governments when federal statute or terms of a tribal governing document require the Secretary of the Interior to conduct and approve an election to adopt, amend, or revoke tribal governing documents; or adopt or amend charters. *See* 25 C.F.R. § 81.1; *see also* 25 C.F.R. § 81.4 ("Secretarial Election").

126.    A "Tribe" means any Indian or Alaska Native tribe, band, nation, pueblo, village or community that is listed in the Federal Register under 25 U.S.C. [§ 5129], as recognized and receiving services from the Bureau of Indian Affairs. 25 C.F.R. § 81.4 ("Tribe").

127.    A "Member" of a tribe or tribal member means any person *who meets the criteria for membership* in a *tribe* and, if required by the tribe, is formally enrolled. (emphasis added) *See* 25 C.F.R. § 81.4 ("Member").

128.    In this case, neither the Tribe, nor its Members, have requested to initiate the Secretarial Election process pursuant to 25 C.F.R. § 81.6.

129.    The Tribe has never adopted a tribal constitution and bylaws that has been subject to the approval of the Secretary of the Interior pursuant to 25 U.S.C. § 5123.

---

[5] "The Modoc Indian Tribe of Oklahoma shall consist of those Modoc Indians who are direct lineal descendants of those Modocs removed to Indian territory (now Oklahoma) in November 1873, and who did not return to Klamath, Oregon, pursuant to the Act of March 9, 1909 (35 Stat. 751), as determined by the Secretary of the Interior, and the descendants of such Indians who otherwise meet the membership requirements adopted by the tribe."

C. **Specific Allegations Related to Defendants Activities Subject to Plaintiffs' Claims in Violation of the Administrative Procedure Act and Due Process Rights.**

130.    This lawsuit challenges Defendants' unlawful acceptance of petition as violative of the Administrative Procedure Act

131.    On information and belief, on or around April 23, 2024, a petition for adoption of a tribal constitution was circulated in and around Calaveras County, California.

132.    Plaintiffs were neither provided an opportunity to review the petition for a Secretarial Election to adopt a tribal constitution nor see the proposed tribal constitution.

133.    On information and belief, Plaintiffs were not offered an opportunity to sign the petition for a Secretarial Election to adopt a tribal constitution.

134.    On or about April 23, 2024, Defendants provided Notice on the Central California Agency website announcing that the Bureau of Indian Affairs, Central California Agency received a petition to the Secretary of the Interior to call and conduct a Secretarial Election on a proposed tribal constitution of the California Valley Miwok Tribe. California Valley Miwok Tribe – Organizational Information, Bureau of Indian Affairs (April 23, 2024), https://www.bia.gov/regional-offices/pacific/central-california-agency/cvmt.

135.    Plaintiffs received no direct notice. Neither were Plaintiffs given an opportunity to review the proposed draft tribal constitution, nor were Plaintiffs provided an opportunity to review the petition for a Secretarial Election to adopt a tribal constitution prior to submission to Defendants.

136.    On May 7, 2024, Plaintiffs were able to obtain "Notice of the Petition" through the Tribe's legal counsel from the Central California Agency and Local Bureau Official, Superintendent Long.

137.    On May 22, 2024, Plaintiffs timely and appropriately submitted challenge(s) to the Notice of a Petition for Secretarial Election and provided their statement of reasons, pursuant

to 25 C.F.R. § 81.61. Defendants acknowledged the submission and receipt of Plaintiffs' challenge(s).

138.   Plaintiffs challenged the Notice and Petition by identifying 172 individual signatories as ineligible to submit the petition as they were not Members of the Tribe as required under 25 C.F.R. § 81.4.

139.   The petition lacked the exact document— the proposed tribal constitution— to be voted on as required by 25 C.F.R. § 81.6(a)(2).

140.   Plaintiffs made direct challenges pursuant to 25 C.F.R. § 81.61(a) and (b)(2) identifying the eligibility of certain individuals; and 25 C.F.R. § 81.61(b)(3) for being inconsistent or improperly formatted.

141.   As Plaintiffs identified, the individuals whose names appear on the petition either are not, or ever have been tribal members of this Tribe or any Indian tribe.

142.   On information and belief, 172 individual signatories where not eligible to sign the petition under 25 C.F.R. §81.53 because those signatories were not tribal members. A determination to accept these signatories without reasoned explanation or review is arbitrary and capricious.

143.   In addition, on information and belief, the petition did not conform to the requirements of 25 C.F.R. §81.55(a)(1) because each page of the petition did not contain a summary of the purpose of the petition or proposed tribal constitution or proposed amendment language. Such action facially violates the APA. 5 U.S.C. § 706.

144.   The Tribe did not call for a Secretarial Election through a request to the Secretary of the Interior under 25 C.F.R. §81.6. Such action facially violates the APA. 5 U.S.C. § 706.

145.   On information and belief, the BIA Local Bureau Office did not contact the Tribe to determine the current number of tribal members 18 years of age or older. Such action facially violates the APA. 5 U.S.C. § 706.

146.    On information and belief, the Tribe was not contacted by petitioners or Defendants to determine the minimum number of tribal members required to sign the petition. Such action facially violates the APA. 5 U.S.C. § 706.

147.    On information and belief, Defendants knew that individuals signing the petition were not, nor ever had been Indians, sufficient to meet the definition under 25 U.S.C. § 5129 of the IRA to petition for a 25 U.S.C. § 5123 constitutional referendum. Such action facially violates the APA. 5 U.S.C. § 706.

148.    On information and belief, Defendants did not know the minimum number of tribal members required to sign the petition to satisfy the regulations. Such action facially violates the APA. 5 U.S.C. § 706.

149.    The petitioners do not cite a California Valley Miwok Tribe governing document that permits tribal members to petition for a Secretarial Election as required under 25 C.F.R. §81.52. Such action facially violates the APA. 5 U.S.C. § 706.

150.    On information and belief, Defendants did not provide a copy of the written acknowledgment of receipt and petition to the recognized Tribal governing body, as required under 25 C.F.R. §81.60(b). Such action facially violates the APA. 5 U.S.C. § 706.

151.    On information and belief, Defendants did not provide a courtesy copy of all correspondence regarding technical assistance to the petitioners to the Tribe's governing body in accordance with the regulations. Such action facially violates the APA. 5 U.S.C. § 706.

152.    On information and belief Defendants solicited Certificate of Degree of Blood Quantum applications and accompanying (applications) information from individuals to whose name appeared on and sign the petition. Plaintiffs note that *CVMT v. Haaland* is pending before this District Court. No. 24-cv-947 (TSC), ECF 1 (Apr. 2, 2024) (lawsuit brought by Silvia Burley, among other, seeking to enjoin the sue of Certificate of Degree Blood as unconstitutional).

153.    On information and belief, Defendants, based on individuals that submitted Certificate of Degree of Indian Blood applications, determined individuals who names appear and sign the petition may participate in a tribal constitutional committee.

154.    On information and belief, Defendants, based on individuals that submitted Certificate of Degree of Indian Blood applications, determined, communicated, or otherwise allowed individuals who names appear and sign a petition for adoption of a constitution by a Secretarial Election pursuant to the IRA. 25 U.S.C. § 5123.

155.    Plaintiffs, each individually, submitted a written point by point legal analysis stating their reasons for appeal as well as more than 1000 pages in supporting materials as required by the regulations. No information, justification, or explanation is known about Defendants' review and determination of Plaintiffs challenge to the petition as no justification or explanation was provided against allegations levied in the administrative challenge.

156.    To the extent that the Tribe had called for a Secretarial Election, Defendants is still legally compelled and have a duty to complete a searching inquiry as to whether each signature of the petition, and that each individual listed who may vote meets the definition of "Indian" pursuant to 25 U.S.C. § 5129 and satisfies the criteria for tribal membership under 25 C.F.R. § 81.4 failure to do so is arbitrary and capricious.

157.    In addition to the direct challenges to the Notice and Petition, Plaintiffs also identified procedural defects that rendered the submission of the Notice and Petition as defective because it did not comply with 25 C.F.R. Part 81. Such action facially violates the APA. 5 U.S.C. § 706.

158.    Here Plaintiffs informed Defendants that the Tribe and its Members had not initiated the request for a Secretarial Election to take place pursuant to 25 C.F.R. § 81.6(a)(1) and that Defendants could not comply with 25 C.F.R. 81.57(a)(2)(i) to establish the minimum number of required signatures of members because they never contacted the Tribe.

159.    The challenge also noted that the requirements for 25 C.F.R. §§ 81.51-81.54 could not be satisfied because the petition lacks any authorizing document of the Tribe to initiate the Secretarial Election process and does not include a Member who could be designated as a "spokesperson for the Member" initiated petition. Such action facially violates the APA. 5 U.S.C. § 706.

160.    Finally, Plaintiffs identified errors directly from the BIA Local Bureau Official in failing to properly cite the appropriate regulation to substantiate a challenge against the petition (the proper instructions on how to challenge the petition); the Notice was defective as it lacked referenced documentation; and the failure to deliver a copy of the proposed petition to the Tribe in accordance with the regulatory scheme and procedure.

161.    Instead of terminating the Secretarial Election process, as required by 25 C.F.R. 81.62(b)(2)(ii), Defendants ignored Plaintiff's challenges and statement of reasons, and then failed to communicate their June 21, 2024, decision (2024 Decision) to Plaintiffs.

162.    Ultimately, it was discovered that Defendants dismissed Plaintiffs challenges without a reasoned explanation or justification to meet the standards articulated by the U.S. Supreme Court and therefore Defendants' action violate the law.

163.    Indeed, Plaintiffs' contention that Defendants failed to provide a reasoned explanation is because Defendants never directly responded to the challenges made by Plaintiffs or responded to the Plaintiffs.

164.    When Plaintiffs were able to obtain a copy of Defendants 2024 Decision, dated June 21, 2024, the document revealed that Defendants determined the following:

    a.  Plaintiffs' challenge to 172 names listed in the petition as being ineligible pursuant to 25 C.F.R. § 81.61(a) and (b)(2) for failure to comply with 25 C.F.R. §§ 81.4 and 81.51-81.54 was dismissed as being "without merit";

- Defendants determined that, "The [Tribe] is not formally organized and is without formal, governing documents. Therefore, there is no recognized tribal government or membership."; and

- "These decisions refer to Eligible participants instead of members since this Tribe is not formally organized under the Indian Reorganization Act. Furthermore, the Burleys' challenge regarding petition signatures as being ineligible because they are not "tribal member" (*sic*) is without merit.";

- The determination of "Eligible participants" was made based upon Certificate of Degree of Blood documentation submitted on November 29, 2022, as required within a Public Notice;

- The documentation referenced by the Defendants was an application for a Certificate Degree of Indian Blood.

b. Plaintiffs' challenge to the petition's inconsistent and improper formatting pursuant to 25 C.F.R. § 81.61(a) and (b)(3) for failure to include the exact language and document(s) that the petition referenced as required by 25 C.F.R. §§ 81.6(a)(2) and 81.55(a)(1) was dismissed as an "inadvertent" omission that would not invalidate the process of requesting a Secretarial Election.

- Defendants admitted their omission in response to Plaintiffs' request for a copy of Petition and *all related documents* and did not properly comply with 25 C.F.R. § 81.55(a)(1);

- Defendants determined that this was "not a fatal flaw that invalidates the process of requesting a Secretarial Election."

c. Plaintiffs' challenge to the Procedural and Administrative Defects were dismissed as not falling within 25 C.F.R. 81.61 of permitted challenges and were also dismissed as being "without merit" according to Defendants.

165.    Defendants validated 176 signatures as satisfying a 50% requirement and the petition under 25 C.F.R. § 81.62(a)(4).

166.    Defendants' 2024 Decision is a final agency action pursuant to 25 C.F.R. § 81.62(b)(2) making judicial review available as exhaustion of administrative remedies is satisfied.

167.    Notably, the 2024 Decision reveals that the Tribe and the vast majority of its Members were completely excluded from the review process of the proposed tribal constitution being promoted by Defendants that aims to commandeer the Tribe and Tribal government.

168.    Plaintiffs argue that Defendants' 2024 Decision and determinations that Plaintiffs' challenges of the petition were "without merit" are arbitrary and capricious and an abuse of discretion, violative of the Administrative Procedure Act.

169.    To be clear, Plaintiffs are not challenging whether they have been denied membership or participation in a tribal activity—nor do they argue whether they should be or could be eligible to participate in tribal activities— by a tribal government.

170.    Plaintiffs are complaining that Defendants have unlawfully accepted a petition from individuals who do not meet the Tribe's criteria for membership under the Tribe's code or 25 C.F.R. § 81.4 in order to submit a petition for a Secretarial Election pursuant to 25 U.S.C. § 5123 and its accompanying regulations, 25 C.F.R. Part 81 on behalf a of Indian tribe.

171.    Defendants issued their 2024 Decision and determinations to a third-party non-Indian that Plaintiffs' challenge(s) are "without merit" and did no more than carbon copy Plaintiffs' names.

172.    Plaintiff Tribe received no notice or information from Defendants communicating any determination to the Tribe.

173.    As described in this Complaint, Defendants' actions to validate a petition to hold a Secretarial Election to adopt a constitution for a federally recognized Indian tribe is an *ultra vires* agency action when it accepts that "petition" from individuals that have either never been

members of this Tribe, a federal recognized Indian tribe, or who have never possessed Indian status.

174. Defendants provide no authority that actions in this matter are related to 25. C.F.R. Part 62, including enrollment decisions related to judicial or statutory mandates or those authorized and delegated to Defendants pursuant to a tribal law mandate pursuant to an already adopted IRA constitution.

175. No statute, regulation, or judicial determination authorizes Defendants to bestow membership upon an individual sufficient to make that individual eligible to meet the definition of Indian pursuant to 25 U.S.C. § 5129 and then use that status or membership to validly affix that individual's signature to a petition submitted pursuant to 25 U.S.C. § 5123.

176. On or about July 2, 2024, Plaintiffs Silvia Burley and William Burley, received notice from the Election Board Chairman of the Bureau of Indian Affairs Regional Director Amy Dutschke's 2024

177. On or about July 15, 2024, Plaintiff Silvia Burley received notice from the Election Board Chairman listing the members of the Secretarial Election Board, the proposed tribal constitution of the California Valley Miwok Tribe, notice of the September 16, 2024, election date and voter registration information.   Letter from Jason Vanderheide, Election Board Chairman, to Silvia Burley, Chairperson (July 15, 2024).

178. On or about July 18, 2024, Plaintiff Silvia Burley received notice from Superintendent Harley Long that the Secretarial Election was rescheduled.

## FIRST CLAIM FOR RELIEF

1. Plaintiffs incorporate by reference each fact and allegation in this Complaint in all paragraphs.

2. The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

3.    Under the APA, the Court may hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706 (2)(a).

4.    The 2024 Decision to accept the petition facially violates 5 U.S.C. § 706 (2) by failing to follow Defendants own regulation.

5.    The Decision to validate a petition to conduct a purported Secretarial election from non-member petitioners is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

6.    The Decision validate a petition to conduct a purported Secretarial election from non-member petitioners is an abuse of discretion under 5 U.S.C. § 706.

7.    The decision to validate a petition to hold a Secretarial Election to adopt a tribal constitution for a federally recognized Indian tribe violates 5 U.S.C. § 706 because the Defendants have not provided a reasoned explanation for the policy shifts.

8.    The decision to validate a petition to hold a Secretarial Election to adopt a tribal constitution for a federally recognized Indian tribe violates the APA because it is *ultra virus* agency action outside the scope of its statutory scope and authority. The Plaintiffs' due process rights are protected under the statute.

## SECOND CLAIM FOR RELIEF
### (VIOLATON of PROCEDURAL DUE PROCESS GUARENTEES OF THE U.S. CONSTITUTION)

1.    Plaintiffs incorporate by reference each fact and allegation in this Complaint in all paragraphs.

2.    This Court has authority under 28 U.S.C. § 1331 and its traditional powers of equity to declare invalid and enjoin agency action that violates the Constitution. Where a

Complaint contends that agency action offends the Constitution, and for that reason should be set aside, the Court affords no deference to the agency but instead reviews the constitutional issues independently.

3. The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend.

4. The Due Process Clause has a substantive component that provides heightened protection against government interference with fundamental rights and liberty interests.

5. When government deprives an individual of a fundamental right or substantially infringes upon a fundamental liberty interest, such government action may be sustained only upon a showing that it is, at the very least, substantially related to an important government interest, if not narrowly tailored to serve a compelling government interest. Here, Defendants' action violates reasonably calculated to allow Plaintiffs to protect their interests.

6. Defendants' actions violate Plaintiffs' fundamental right to be provided procedural due process rights, and that deprivation of rights impermissibly infringes upon Plaintiffs' fundamental liberty interests in violation of the Fifth Amendment and Fourteenth Amendments to the United States Constitution, and will continue to do so if Plaintiff is not afforded the relief requested. Defendants' actions must therefore be set aside and permanently enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court provide declaratory and injunctive relief under the laws of the United States, including but not limited to 5 U.S.C. §§ 701-706 and 28 U.S.C. §§ 2201-2202. This action arises under federal law, including but not limited to the IRA. 25 U.S.C. § 5108.

1.      Declare that Defendants failed to follow their own rules in 25 C.F.R. Part 81 in accepting and validating a "petition" to hold a Secretarial Election to adopt a tribal constitution for a federally recognized Indian tribe. Defendants

2.      Declare that Defendants violated the APA by accepting and validating a "petition" to hold a Secretarial Election to adopt a tribal constitution for a federally recognized Indian tribe without a reasoned explanation.

3.      Declare that Defendants violated the APA by failing to articulate their authority to accept and validate a "petition" to hold a Secretarial Election to adopt a tribal constitution for a federally recognized Indian tribe without a reasoned explanation and failed to explain their shift in policy that the Tribe must "reorganize."

4.      Declare that Defendants have engaged in conduct that deprives Plaintiffs of their fundamental right to be provided procedural due process rights, and that deprivation of rights impermissibly infringes upon Plaintiffs' fundamental liberty interests in violation of the Fifth Amendment and Fourteenth Amendments to the United States Constitution, and will continue to do so if Plaintiff is not afforded the relief requested.

5.      Issue a declaration, pursuant to 28 U.S.C. § 2201, that Defendant's Decision to validate, schedule, and conduct a Secretarial election based on a unlawful petition for a constitutional referendum pursuant to the IRA is contrary to and its application here is in violation of the plain meaning of the Indian Reorganization Act of 1934, Section 16a, 16h, and Section 19; and

6.  Hold unlawful, and set aside, Defendant's Decisions to validate, schedule, and conduct a Secretarial election based on a unlawful petition for a constitutional referendum pursuant to the IRA as arbitrary and capricious and an abuse of discretion, and the Department's change in policy as arbitrary and capricious pursuant to 5 U.S.C. § 706(2)(A); and

7.  Enjoin Defendants from taking further action related to the petition accepted and validated under any federal law or regulation including 25 C.F.R. Part 81.

8.  Enjoin the Defendants from further interference in internal Tribal membership matters in accordance with long-standing principles, policy, and legal precedent in the United States; and

9.  Issue all other appropriate injunctive or equitable relief necessary to provide complete relief to Plaintiffs; and

10. Issue an award of costs and fees, including attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

11. Grant Plaintiffs such other and further relief that the Court may deem is just and proper.

Dated:          August 23, 2024                              Respectfully submitted,


**PEEBLES BERGIN SCHULTE & ROBINSON, LLP**


By:          _____
             Peter D. Lepsch (D.C. Bar No. 495548)
             401 9th Street, NW, Ste. 700
             Peebles Bergin Schulte & Robinson LLP
             Washington, DC 20004

(202) 450-4887
plepsch@ndnlaw.com

Patrick Bergin (D.C. Bar No. 493585)
Peebles Bergin Schulte & Robinson LLP
2020 L Street, Suite 250
Sacramento, CA 95811
(916) 441-2700
pbergin@ndnlaw.com

Blake Follis (*admission to District pending swearing- in September 9, 2024*)
Peebles Bergin Schulte & Robinson LLP
825 S. Kansas Ave., Ste. 515
Topeka, Kansas 66612
(785) 408-1192
bfollis@ndnlaw.com


*Attorneys for the Plaintiffs*